## Case No. 16,868.

VAN NESS et ux. v. UNITED STATES et al.

[2 Cranch, C. C. 376.] [1]

Circuit Court, District of Columbia.    April Term, 1823.[2]

INJUNCTION — DRAINAGE LAW — CORPORATION OF WASHINGTON—SALE OF LOTS.

1. Under the act of congress of the 7th of May, 1822 [3 Stat. 691], authorizing the corporation of Washington to drain the low grounds, &c., and the representative of the former proprietor to institute a bill in equity, in the nature of a petition of right, against the United States this court cannot grant an injunction to prevent the execution of the act.

2. By that act, the power to sell the lots is absolutely vested in the corporation of Washington, and the court has only authority to decide what proportion, if any, of the money arising from the sale the complainants may be entitled to.

3. The court has no authority under the act, to require the corporation of Washington to give security for the payment of a moiety of the proceeds of sale to the complainants.

Bill in equity, in the nature of a petition of right, filed under the authority given by the 6th, 7th, 8th, and 9th sections of the act of congress of the 7th of May, 1822, c. 96 (3 Stat. 691), entitled "An act to authorize and empower the corporation of the city of Washington, in the District of Columbia, to drain the low grounds on and near the public reservations, and to improve and ornament certain parts of such reservations."

By the 6th section it is enacted, "that it shall be lawful for the legal representative of any former proprietor of the land directed to be disposed of by this act. or persons lawfully claiming title under them, and they are hereby permitted and authorized at any time within one year after the passing of this act, to institute a bill in equity, in the nature of a petition of right, against the United States, in the circuit court of the United States for the District of Columbia, in which they may set forth the grounds of their claim to the land in question.

Section 7. That a copy of said bill shall be served on the attorney-general of the United States, and it shall be his duty to prepare and put in the proper pleas and answer, and make all proper defence thereto, in behalf of the United States.

Section 8. That the said suit shall be conducted according to the rules of a court of equity. And the said court shall have full power and authority to hear and determine upon the claim of the plaintiff or plaintiffs, and what proportion, if any, of the money arising from the sale of the land hereby directed to be sold, the parties may be entitled to.

Section 9. That the plaintiff, or plaintiffs. or the attorney-general of the United States shall be entitled to an appeal to the supreme court of the United States, whose decision shall be conclusive between the parties; and should no appeal be taken, the judgment or decree of the said circuit court shall, in like manner, be final and conclusive."

The 2d section of the act, authorized the corporation of Washington to cause certain grounds in the city, designated as "Public Reservations, Nos. 10, 11, and 12," to be divided into building lots, and to sell the right of the United States in those lots, and with the proceeds of sale to make certain improvements mentioned in the act.

The bill was filed by John P. Van Ness. and Marcia, his wife, who was the sole heir at law of David Burns, who was the proprietor of the land in question. when the city was laid out. They contended, that under the original deeds of trust, these public reservations were to be always held by the United States for public purposes. and not to be sold as building lots for private use; and that if converted into building lots, the original proprietors were entitled to one half of them. for the same reason that they were entitled to the moiety of the lots originally designated as building lots, to be alternately selected by the public and the original proprietor; and for this purpose they prayed that the corporation of Washington. which was made a defendant. to the bill, might be enjoined from selling, until the building lots should be so selected and allotted. See the case as reported in 4 Pet. [29 U. S.] 232.

The case was argued by Mr. Hay, for the complainants. and by Mr. Jones for the United States, and the corporation of Washington, upon the motion for an injunction.

Mr. Hay referred to the original agreement with the proprietors of the land and the deed of trust, which were executed to Beall and Gantt; the act of cession by the state of Maryland; the acts of congress of May 6, 1796 [1 Stat. 462]; April 18, 1798 [Id. 551]; January 12, 1809, § 8 [2 Stat. 513]; February 24, 1817 [3 Stat. 346]; the minutes of the proceedings of the commissioners in the case of Samuel Davidson in 1794, and the opinion of Mr. Brackenridge.

Mr. Jones, for the defendants, relied upon the terms of the deeds of trust, whereby the reserved squares were to be held in trust "for the use of the United States."

CRANCH. Chief Judge, delivered the opinion of the Court (THRUSTON, Circuit Judge, absent).

This is a bill in equity, in the nature of a petition of right, filed by virtue of the leave for that purpose given by the act of congress of the 7th of May, 1822, c. 96. § 6 (3 Stat. 691). It prays an injunction to prevent the corporation of Washington from selling the lots which by the said act the corporation is authorized to lay off and sell. The ground, upon which the injunction is requested, is, that by such sale under the authority of the Un[...]

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Affirmed in 4 Pet. (29 U. S.) 232.]

ed States, they would forfeit their right in the land, and it would revert to the complainants, who would thereby become entitled to the whole land itself. The complainants, however,. state that they are not disposed to insist on their strict right to the whole land, but are willing to be placed in the like condition as their ancestor would have been in, if the same land had been laid out into building lots in the year 1792, immediately after the execution of the deed of trust. They are willing to take every alternate lot. It will be perceived that the complainants seek to prevent the completion of the act which is the ground of their claim; so that if the court should perpetually enjoin the sale of the lots, their claim must entirely fail. It must be evident, therefore, that the complainants have not yet a ground to claim an injunction. It is also evident, that as their title must be founded on the sale, the sale can do them no injury. If they should become legally entitled to the land they may maintain their ejectments against the purchasers. If the complainants claim under the act of congress, they cannot deny its validity. They must take only what that act gives them.

The court is of opinion that, by that act, the power to sell the lots is absolutely given to the corporation; and that it makes no provision for suspending the sales, even if the court, upon a bill, in the nature of a petition of right, filed under that act, should be of opinion that the complainants have a good claim to the land.

The court is also of opinion that the power and authority given, by the act, to this court to hear and determine upon the claim of the complainants, is given merely for the purpose of enabling the court to determine what proportion. if any, of the money arising from the sale of the land, the complainants may be entitled to. The objects, contemplated by the act, are of a public nature, and highly important in regard to the health of the city. The act gives no power to the court, in any event, to prevent the accomplishment of those objects. We cannot, upon a bill filed under the act, authorize a proceeding which shall suspend its execution. In regard to the motion last made by the complainant's counsel, that an injunction should be awarded until security should be given by the corporation to pay one moiety of the proceeds of the sales of the lots, in case the court should decree a portion thereof to the complainants,—

The court is of opinion, that, upon a bill filed under the leave given by the act, it has no authority to require such security. We consider our authority, in a case in which we have cognizance only by virtue of the act, limited to the powers given by the act itself; and we are not sure that the United States are not bound, in good faith, by the act to guaranty the payment of the money which the court may award. The United States have made the corporation their agent to carry into effect the objects of the act; and

have reposed in it a confidence which the court cannot presume it will abuse. The motion of the complainant's counsel, for an injunction, is therefore overruled.

The court, at a subsequent term, dismissed the bill, and upon appeal to the supreme court, the decree of this court was affirmed, in January, 1830. 4 Pet. [29 U. S.] 232.